STATE OF NORTH CAROLINA v. ISAAC JACKSON STROUD

No. 162A95

(Filed 6 December 1996)

1. **Constitutional Law § 202 (NCI4th)— kidnapping and murder—blows to restrain separate from blows causing death—convictions of both crimes**

   The trial court did not err by denying defendant's motion to dismiss a charge of second-degree kidnapping in a prosecution for murder and kidnapping on the ground that all of the blows to restrain the victim were essential to or related to the victim's death where the evidence showed that the victim received innumerable and various blows over the course of many hours, some of which initially immobilized and restrained her and others of which proximately caused her death; the evidence was thus sufficient to establish that the blows used for restraint were separate and apart from the blows causing death; and the evidence regarding restraint was irrelevant to the charge of first-degree murder.

   **Am Jur 2d, Abduction and Kidnapping § 54; Criminal Law §§ 20, 21.**

   **What felonies are inherently or foreseeably dangerous to human life for purposes of felony-murder doctrine. 50 ALR3d 397.**

   **Due process as violated by successive state criminal trials for single offense or for multiple offenses of the same character, committed simultaneously. 2 L. Ed. 2d 2020.**

2. **Constitutional Law § 202 (NCI4th)— double jeopardy—submission of kidnapping and felony murder—defendant not sentenced for kidnapping**

   The trial court did not subject defendant to multiple punishments for the same offense by submitting to the jury a charge of second-degree kidnapping and a charge of felony murder based on the underlying felony of kidnapping where defendant was not sentenced for kidnapping but prayer for judgment was continued on that charge.

   **Am Jur 2d, Criminal Law §§ 276-279; Homicide §§ 46, 190.**

Supreme Court's views as to application, in state criminal prosecutions, of double jeopardy clause of Federal Constitution's Fifth Amendment. 95 L. Ed. 2d 924.

3. **Criminal Law § 1367 (NCI4th Rev.)— felony murder and murder by torture—underlying felony as aggravating circumstance**

The underlying felony of kidnapping was properly submitted as an aggravating circumstance where defendant was convicted on theories of felony murder and murder by torture.

Am Jur 2d, Abduction and Kidnapping § 54; Criminal Law § 598; Homicide § 46.

What constitutes murder by torture. 83 ALR3d 1222.

4. **Appeal and Error § 418 (NCI4th)— defendant's contentions—concession of rejection by appellate court—no further argument—waiver**

Defendant's contentions that his constitutional rights were violated in a murder trial by the admission of hearsay testimony of eight witnesses relating to his prior acts of violence against the victim and by statements of the prosecutor in his closing argument in the capital sentencing proceeding were waived where defendant conceded that the appellate court has consistently rejected similar claims and made no further argument in support of his contentions. N.C. R. App. P. 28.

Am Jur 2d, Constitutional Law § 849; Criminal Law §§ 647, 722, 957; Evidence § 892; Homicide § 560.

Admissibility of statement under Rule 803(24), providing for admissibility of hearsay statement not covered by any specific exception but having equivalent circumstantial guarantees of trustworthiness. 36 ALR Fed. 742.

Federal Constitutional right to confront witnesses— Supreme Court cases. 98 L. Ed. 2d 1115.

5. **Jury § 141 (NCI4th)— capital sentencing—voir dire— parole eligibility questions excluded**

The trial court did not err in the denial of defendant's motion to permit *voir dire* of prospective jurors in a capital sentencing proceeding regarding their beliefs about parole eligibility. The decision of *Simmons v. South Carolina*, 512 U.S. 154, does not

affect this issue where, as here, the defendant would have been eligible for parole if given a life sentence.

**Am Jur 2d, Criminal Law § 913; Jury §§ 202, 206.**

**Right of counsel in criminal case personally to conduct the voir dire examination of prospective jurors. 73 ALR2d 1187.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

6. **Criminal Law § 1370 (NCI4th Rev.)— aggravating circumstance—heinous, atrocious, or cruel murder—constitutional instructions**

The trial court's instructions on the especially heinous, atrocious, or cruel aggravating circumstance provided constitutionally sufficient guidance to the jury.

**Am Jur 2d, Criminal Law § 598; Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

7. **Criminal Law § 1402 (NCI4th Rev.)— death penalty not excessive or disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant was convicted on theories of felony murder and murder by torture; defendant beat the victim to death over the course of many hours; the victim's brutal death was found by the jury to be especially heinous, atrocious, or cruel; the jury found the aggravating circumstance that the murder was committed by defendant while engaged in the commission of a kidnapping; the victim suffered great pain over an extended period of time before her death; the victim was of unequal physical strength to the defendant; the victim feared defendant; defendant was thirty-eight years old at the time of the killing; defendant waited for several hours and attempted to clean up the evidence of the beating before seeking medical help for the victim; and defendant showed no remorse and denied beating the victim.

**Am Jur 2d, Criminal Law § 628; Homicide § 48.**

STATE v. STROUD

[345 N.C. 106 (1996)]

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Allen (J.B., Jr.), J., at the 23 January 1995 Criminal Session of Superior Court, Durham County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for second-degree kidnapping was allowed 30 November 1995. Heard in the Supreme Court 15 May 1996.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*Anthony Lynch for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 17 May 1993 for the first-degree murder of Jocelyn Mitchell and on 7 November 1994 for the first-degree kidnapping of Mitchell. The defendant was tried capitally, and the jury found the defendant guilty of first-degree murder on the basis of felony murder and on the basis of murder by torture. The defendant was also found guilty of second-degree kidnapping. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that the defendant be sentenced to death. Judge Allen entered a prayer for judgment continued on the kidnapping conviction and sentenced the defendant to death for the murder conviction.

At trial, the State presented evidence tending to show that Jocelyn Mitchell died on 1 May 1993 from dozens of blunt force injuries to her body. Defendant was in the apartment with the victim the night of the beating. John McPhatter, the defendant's next-door neighbor, and McPhatter's girlfriend, Debra Harper, each testified that on 1 May 1993, between 12:30 and 1:30 a.m., they awoke to a loud thump from defendant's apartment. McPhatter and Harper also heard the defendant arguing and the victim talking and crying. They specifically heard the defendant say, "You shouldn't have gone to that party," and heard the victim say, "Look what you've done to my face." McPhatter and Harper testified that as the night went on, the defend-

ant continued to argue, but the victim stopped talking and only cried. McPhatter testified that when he left his apartment at 5:30 a.m., he could still hear the defendant arguing and the victim crying. Similarly, when Harper left the apartment between 6:00 and 6:30 a.m., she could still hear the defendant arguing and the victim "whimpering." Linda Baldwin, an upstairs neighbor, testified that by 7:30 a.m., there were no noises coming from the apartment occupied by the defendant and Mitchell.

Approximately seven hours later, the defendant called 911 from his apartment. He told the dispatcher that Mitchell had collapsed, that he could not wake her and that she was breathing lightly. The victim was not breathing when paramedics arrived, she had no pulse and her neck and arms were stiff. Defendant told the paramedics that Mitchell had been assaulted around 6:00 p.m. the night before at the school where she was employed as a teacher. The paramedics called the police.

Officers M.L. Hayes and J.A. Pickett, Jr., of the Durham Police Department arrived at the defendant's apartment around 3:00 p.m. The defendant told Officer Hayes that he and Mitchell had been fighting all night. Defendant also told the officers that Mitchell had come home around 8:00 p.m. and stated that she had been attacked and could not breathe. At trial, however, the State presented evidence that at about 8:00 p.m., Mitchell was seen parking her car and that she looked normal, had no visible injuries, was not bleeding and had no trouble walking. The State also presented evidence from a co-worker who observed Mitchell shopping at a grocery store around 11:55 p.m. The co-worker noticed nothing strange about Mitchell's appearance or actions and testified that Mitchell was not crying and appeared to be in good health.

Dr. John Butts, Chief Medical Examiner of the State of North Carolina, performed an autopsy on the victim. Dr. Butts' examination revealed, among other injuries, bruising on either side of the eyes, behind the right ear, on the lower part of the neck and over the front part of the skull. There was a laceration on the top of the head that extended into the deeper skin tissue that covers the skull. There were multiple bruises on the upper and mid-back, as well as extensive bruising of the right side and back, upper left arm and elbow, buttocks, back of the right thigh and all along the front part of the legs. The victim's skin was torn and scratched in several places. One back left rib was broken in two places, and ribs eight through eleven on

the right side in the back were broken. One of the victim's ribs punctured the right lung, causing it to collapse and causing bleeding into the chest cavity. Dr. Butts characterized the wounds to the hands and forearms as defensive wounds from fending off her assailant's blows.

Dr. Butts testified that, in his opinion, Jocelyn Mitchell was struck dozens of times, causing her tissues to rupture and bleed into the muscles and fat beneath her skin. Further, some of her fat was broken up by the blunt-force trauma. The fat liquified and flowed into the victim's lungs, causing hypoxia, a lack of oxygen to the tissues. The overall process of internal bleeding, loss of blood to the tissues, collapse of the lung and fat in the lungs gradually resulted in loss of consciousness, coma and then death. Dr. Butts further testified that the victim's injuries would have been very painful, would have affected the victim's ability to move or walk and eventually would have incapacitated her.

[1] In his first assignment of error, the defendant contends that the trial court erred by denying his motion to dismiss the second-degree kidnapping charge. This is based on defendant's assertion that all of the blows dealt to the victim in this case were essential to or related to the victim's death. Therefore, the argument continues, the restraint that resulted in the victim's murder is indistinguishable from the restraint used by the State to support the kidnapping charge. As a result, defendant contends, all three theories of first-degree murder submitted to the jury were tainted by the failure to dismiss the second-degree kidnapping charge. We disagree.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each element of the offense charged and substantial evidence that the defendant was the perpetrator of such offense. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). If substantial evidence of each element is presented, the motion to dismiss is properly denied. *State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989). Substantial evidence is "that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981). In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *Olson*, 330 N.C. at 564, 411 S.E.2d at 595.

**STATE v. STROUD**

[345 N.C. 106 (1996)]

Viewed in the light most favorable to the State, the evidence is clearly sufficient to establish that the blows used for restraint were separate and apart from the blows causing death. An argument ensued between the defendant and the victim sometime between 12:30 and 1:30 a.m. and continued for six or seven hours, during which time the victim's talking degenerated to crying, then whimpering and finally silence. The autopsy evidence shows that the victim suffered dozens of blunt-force injuries. In addition to a number of broken ribs, she had bruises and cuts all over her body, from her head down to her legs. These injuries caused internal bleeding, loss of blood to the tissues, accumulation of fat in the lungs and collapse of one lung. The medical examiner testified that the injuries would have affected the victim's ability to move or walk and eventually would have incapacitated the victim. From this evidence, it is reasonable to infer that at some point the victim's injuries were severe enough to prevent her from leaving but not so severe as to cause death. Based on this evidence, we find sufficient evidence that the restraint and death blows were separable and conclude that the trial court did not err in denying defendant's motion to dismiss the second-degree kidnapping charge.

Defendant attempts to analogize this case to *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986). In *Prevette*, the victim suffocated to death from a gag being placed in her mouth. The evidence established that the victim would not have died from the gag if her hands, knees and ankles had not been bound. As a result, the bonds could not be regarded as a separate and distinguishable restraint because they were necessary conditions of the cause of death. In the present case, however, there were innumerable and various blows struck over the course of many hours, some of which initially merely immobilized and restrained and others of which proximately caused death. Because not all of the blows were necessary conditions of the cause of death, *Prevette* is not applicable in the present case.

Moreover, the evidence regarding restraint is irrelevant to the charge of first-degree murder based on murder by torture. In this case, the defendant was convicted of first-degree murder on the basis of felony murder *and* on the basis of murder by torture, as well as convicted of second-degree kidnapping. In order to sustain a conviction of first-degree murder by torture, the State must prove that the defendant intentionally tortured the victim and that such torture was a proximate cause of the victim's death. *State v. Crawford*, 329 N.C. 466, 479-81, 406 S.E.2d 579, 586-88 (1991). Conviction for kidnap-

ping requires proof that "the defendant unlawfully confined, restrained, or removed the person for one of the eight purposes set out in the statute." *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986).

In *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988), this Court considered and rejected a restraint argument similar to defendant's. In *Wilson*, the defendant tied the victim's hands behind his back, looped the rope around his neck and body, and pulled the loose end under the victim's groin area. The victim died from ligature strangulation. The defendant was convicted of first-degree murder on the theories of premeditation and deliberation and felony murder, as well as first-degree kidnapping. As here, the defendant argued that the restraint integral to the kidnapping was not separate from the strangulation that resulted in the victim's death. This Court rejected the defendant's argument, reasoning that a "restraint is not essential to a charge of premeditated and deliberated murder." *Id.* at 139, 367 S.E.2d at 602.

Similarly, in this case, restraint is not an essential element of first-degree murder by torture. There is no requirement that the victim be restrained in order to convict the defendant of murder by torture, and there is no requirement that death or torture occur to convict the defendant of kidnapping. Because the crimes have separate, integral elements, any purported error in the submission of second-degree kidnapping (of which we have found none) would not infect the submission and conviction of first-degree murder by torture.

**[2]** Defendant also argues that the trial court's failure to dismiss the kidnapping charge and the subsequent submission of the charge of first-degree felony murder based on the underlying felony of kidnapping unconstitutionally subjected him to multiple punishments for the same offense. We find defendant's argument to be without merit. As related to punishment, the Double Jeopardy Clauses of the North Carolina and United States Constitutions only protect against multiple *punishments* for the same offense. *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). The defendant in this case was not sentenced for the kidnapping; a prayer for judgment continued was granted as to the kidnapping charge. The trial court did not subject the defendant to multiple punishment merely by submitting to the jury, under separate statutes, both the second-degree kidnapping charge and the charge of felony murder based on the underlying felony of kidnapping. While the law requires that a defendant con-

**STATE v. STROUD**

[345 N.C. 106 (1996)]

victed of murder solely on the theory of felony murder not be sentenced for the felony underlying the felony murder conviction, it is not error to deny a motion to dismiss the underlying felony charge. *Id.* at 459, 340 S.E.2d at 712.

[3] The defendant concedes that the submission of the underlying felony as an aggravating circumstance is prohibited only when the defendant is convicted solely of felony murder. *State v. Conaway*, 339 N.C. 487, 531, 453 S.E.2d 824, 852, *cert. denied,* — U.S. —, 133 L. Ed. 2d 153 (1995). The defendant in this case was convicted of both felony murder and murder by torture. Submission of kidnapping as an aggravating circumstance was therefore proper. After careful review, we find no compelling reason to overrule prior precedent of this Court. This assignment of error is overruled.

[4] In his next assignment of error, the defendant contends that the admission of hearsay testimony of eight witnesses relating to the defendant's alleged prior acts of violence against the victim deprived the defendant of his state and federal constitutional rights to confrontation, to due process of law, to a fair trial by jury, to effective assistance of counsel and to be free from cruel and unusual punishment. The defendant concedes that this Court has rejected similar claims of error in admission of hearsay testimony. *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687 (1995), *cert. denied,* — U.S. —, 134 L. Ed. 2d 100 (1996); *State v. McHone*, 334 N.C. 627, 435 S.E.2d 296 (1993), *cert. denied,* 511 U.S. 1046, 128 L. Ed. 2d 220 (1994); *State v. Walker*, 332 N.C. 520, 422 S.E.2d 716 (1992), *cert. denied,* 508 U.S. 919, 124 L. Ed. 2d 271 (1993); *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991); *State v. Payne*, 327 N.C. 194, 394 S.E.2d 158 (1990), *cert. denied,* 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991); *State v. Meekins*, 326 N.C. 689, 392 S.E.2d 346 (1990); *State v. Faucette*, 326 N.C. 676, 392 S.E.2d 71 (1990); *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990). Defendant makes no further argument in support of his position. Therefore, defendant's argument is waived pursuant to Rule 28 of the North Carolina Rules of Appellate Procedure. Nevertheless, we have examined the statements at issue, and we find no grounds for overruling the trial court's rulings. This assignment of error is therefore overruled.

Defendant further contends that he is entitled to a new capital sentencing proceeding because of several improper arguments by the prosecutor which deprived him of his constitutional rights to due process of law, to a fair trial by jury and to be free from cruel and

unusual punishment. Again, the defendant concedes this Court has consistently rejected similar claims of error in prosecutors' closing arguments in the penalty phase of a capital trial, *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687; *State v. Gregory*, 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996); *State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995), and he makes no further argument in his favor. Likewise, this issue is deemed waived. Despite defendant's abandonment of his argument, we have thoroughly reviewed the record, and we find that the prosecutor's arguments all fall within the wide latitude accorded prosecutors in the scope of their argument. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). Thus, this assignment of error is overruled.

## PRESERVATION ISSUES

[5] The defendant next assigns error to the trial court's denial of his motion to permit *voir dire* of prospective jurors regarding their beliefs about parole eligibility. The defendant concedes that this issue previously has been decided against him by this Court.

This Court has consistently held that "evidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense." *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995). This Court has also held that the United States Supreme Court's decision in *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), does not affect our position on this issue where, as here, the defendant would have been eligible for parole if given a life sentence. *State v. Miller*, 339 N.C. 663, 676, 455 S.E.2d 137, 151, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 169 (1995). This assignment of error is overruled.

[6] Defendant next argues that the trial court improperly instructed the sentencing jury by giving pattern jury instruction 150.10, which instruction fails to adequately limit the facially vague N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel. We have consistently upheld the instruction as given. "Because these jury instructions incorporate narrowing definitions adopted by this Court and expressly approved by the United States Supreme Court, or are of the tenor of the definitions approved, we reaffirm that these instructions provide constitutionally sufficient guidance to the jury." *State v. Syriani*, 333

N.C. 350, 391-92, 428 S.E.2d 118, 141, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Upon careful review of defendant's arguments, we find no reason to alter or reverse our previous holdings. Accordingly, this assignment of error is overruled.

## PROPORTIONALITY REVIEW

Having found no error in either the guilt/innocence phase of defendant's trial or the capital sentencing proceeding, we are required by statute to review the record and determine (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether passion, prejudice or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1995).

In the present case, the defendant was convicted of first-degree murder on the theories of felony murder and murder by torture. The jury found the aggravating circumstances that the murder was committed while the defendant was engaged in the commission of a kidnapping, N.C.G.S. § 15A-2000(e)(5), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). After thoroughly reviewing the record, transcript and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. We further conclude that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

[7] The final statutory duty of this Court is to conduct a proportionality review. One purpose of proportionality review is to guard against the "capricious or random imposition of the death penalty." *State v. Barfield,* 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Another "is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden,* 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we compare this case to others in the pool, defined in *State v. Williams,* 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon,* 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 1083 (1995), that "are roughly similar with regard to the crime and the defendant." *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120,

86 L. Ed. 2d 267 (1985). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994).

The case *sub judice* has several distinguishing characteristics: the jury convicted the defendant under the theory of murder by torture; the victim's brutal murder was found by the jury to be especially heinous, atrocious, or cruel; the jury found the aggravating circumstance that the murder was committed by the defendant while engaged in the commission of a kidnapping; the victim suffered great pain over an extended period of time before death; the victim was of unequal physical strength to the defendant; and the victim feared the defendant. These characteristics distinguish this case from those in which we have held the death penalty disproportionate.

Of the cases in which this Court has found the death penalty disproportionate, only two involved the especially heinous, atrocious, or cruel aggravating circumstance. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). Both *Stokes* and *Bondurant* are distinguishable from this case.

In *Stokes*, the seventeen-year-old defendant, along with four accomplices, robbed the victim and beat him to death. This Court found the sentence of death disproportionate because of the defendant's young age and because the defendant received the death penalty while an older accomplice received only a life sentence. *Stokes*, 319 N.C. at 21, 352 S.E.2d at 664. By contrast, the defendant's age is not a mitigating circumstance in the present case. Here, the thirty-eight-year-old defendant, without the aid of an accomplice, beat the victim to death.

In *Bondurant*, the defendant shot the victim while they were riding together in a car. This Court found the death penalty disproportionate because the defendant immediately exhibited remorse and concern for the victim's life by directing the driver to go to the hospital. The defendant went into the hospital to secure medical help for the victim, voluntarily spoke to police and admitted shooting the victim. *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182-83. In the present case, the defendant showed no remorse and denied beating the victim. Additionally, the defendant waited for several hours and attempted to clean up the evidence of the beating before seeking medical help for the victim. Thus, we find no significant similarity

between this case and *Stokes* or *Bondurant.*

As noted above, two aggravating circumstances were found by the jury. Of the cases in which this Court has found a sentence of death disproportionate, the jury found the existence of more than one aggravating circumstance in only two cases, *Bondurant* and *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985). *Bondurant,* as discussed above, is clearly distinguishable. In *Young,* this Court focused on the jury's failure to find the existence of the especially heinous, atrocious, or cruel aggravating circumstance. The present case is distinguishable from *Young* because here, the jury found the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. For all of the foregoing reasons, we conclude that the cases in which this Court has found the death penalty disproportionate are distinguishable from the instant case.

In performing proportionality review, it is also appropriate for us to compare the case before us to other cases in which we have found the death sentence to be proportionate. *State v. McCollum,* 334 N.C. 208, 244, 433 S.E.2d 144, 164 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895 (1994). Although we review all of the cases in the pool when engaging in our statutory duty of proportionality review, "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* Here, it suffices to say that we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

Based on the nature of this crime, and particularly the distinguishing features noted above, we cannot conclude as a matter of law that the sentence of death is excessive or disproportionate. We conclude that the defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.