STATE OF NORTH CAROLINA
v.
RONNIE DALE SUGGS.
No. COA07-1366
Court of Appeals of North Carolina
Filed July 1, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jill A. Bryan, for the State.
Irving Joyner for defendant-appellant.
MARTIN, Chief Judge.
Ronnie Dale Suggs ("defendant") appeals from the judgment entered upon his convictions for second degree sexual offense and crime against nature . For the reasons stated below, we find no error.
On 30 October 2006, the Granville County grand jury indicted defendant on charges of first degree sexual offense, crime against nature, and first degree kidnapping. In a "notice of intent to introduce evidence of defendant's prior bad acts" pursuant to N.C.G.S. § 8C-1, Rule 404(b) filed on 16 May 2007, the State informed defendant of its intention to introduce facts supporting earlier charges against him of first degree rape and second degree kidnapping.
At trial, the State introduced evidence tending to show the following occurrences, which gave rise to the charges on which defendant was being tried. At approximately 5:30 p.m. on 2 September 2006, Starneish a Minor ("Ms. Minor") was walking home in Durham when she saw defendant lift the hood of his truck. She noticed a pack of cigarettes and asked defendant for one. When defendant agreed to her request, Ms. Minor walked over to the truck which was on the side of the street. After lowering the hood, defendant gave her a cigarette and asked if she needed a light. Defendant then opened the truck door and pulled out a rusty gun. He told Ms. Minor to get into the truck through the driver's side door, and he proceeded to drive away with her.
Defendant drove around for approximately an hour with the gun in his lap before stopping in a wooded area. He then opened the passenger door, pointed the gun at Ms. Minor, and told her to take off her clothes. After she did so, she said defendant "made me perform oral sex on him there." Ms. Minor estimated it took approximately fifteen minutes to complete the act, and defendant apologized to her afterwards and told her that he was going to take her home. She got dressed, and they drove back toward Durham. Ms. Minor indicated she had repeatedly asked defendant to let her out since she had gotten into the truck, but defendant responded by shaking his head and continuing to drive. Defendant stopped at a store at one point, but he did not get out of the truck. Ms. Minor saw a lady coming out of the store and banged on the window. The lady simply looked and then left in her car. Defendant drove away without getting anything from the store and stopped about thirty minutes later at what appeared to be a recycling facility. He parked behind the dumpsters, and Ms. Minor saw the gun again when he opened the passenger door. Defendant performed oral sex upon her for ten minutes, and the gun was within his reach. He next wanted her to perform oral sex upon him. She did so for about five minutes, then defendant wanted anal sex. Ms. Minor said she "just broke down" and "just started crying really bad" at that time. Defendant told her to "[j]ust get out . . . [g]o in the woods and turn around." The gun was in his pocket at that time. As Ms. Minor got out and pulled up her clothes, she noticed defendant was looking around and inching the gun out of his pocket. She acted as if she were going into the woods and then ran about half a mile to a building. No one came when she banged on the door. She hid behind some bushes and saw defendant's truck go around twice, at which time she ran to a church.
Officers responded to a 911 call from someone at the church. Officer Bryan Kilgore took the initial report from Ms. Minor. She described the perpetrator as a white male with tattoos and blue eyes and as wearing a Ford hat, a blue work shirt, and blue jeans. She said the gun was rusty and that the truck was blue with red carpet and a stick shift. She noticed a broken pair of sunglasses on the dashboard and a screwdriver with a blue handle. Ms. Minor and three officers were unable to find the first location where she was assaulted, but they did find the second location. Detective James Rose observed where it appeared a vehicle had been stopped in the grass and also two spots about mid-way of the vehicle where it appeared people had been.
Detective Rose and Detective Derek Alston later conducted a formal interview with Ms. Minor at the police station. Detective Alston then drove Ms. Minor to Duke Hospital, where a sexual assault kit was performed, and he took her to her home afterwards. No identifying fluids were found on the items tested. Detective Alston testified that he recognized the perpetrator from the description which Ms. Minor had given the officers earlier. When asked on what basis he recognized the individual, the trial court excused the jury and conducted a voir dire hearing into the matter. During the voir dire, Detective Alston recalled investigating a sexual assault which had allegedly occurred at defendant's home approximately a year earlier. A woman who was supposed to dance for defendant accused him of putting a rusty gun to her head and sexually assaulting her. Defendant described the woman as a call girl, and he admitted having oral sex with the woman. Police were unable to locate the gun. After hearing argument from counsel, the trial court made the following ruling:
The witness may testify under Rule 404(b) as to statements made by this defendant to him incident to a matter which occurred 3 September 2005, but his testimony will be limited to what the defendant said to him.
He may not refer to anything additional that a white female dancer may have said to this witness, and the Court will instruct the jury that this evidence is admitted for the limited purpose of showing identity, motive, intent, or plan but for no other purpose.
[G]oing back to Rule 404, the incident was contemporaneous in time, being within a year of the alleged crime in this case, and it was similar in nature.
[U]nder Rule 403, the Court rules the evidence is relevant, it is probative and the probative value is not outweighed by the danger of unfair prejudice to the defendant in that a limiting instruction will be given to the jury.
Detective Alston subsequently testified that he was involved in an investigation involving defendant for an offense which occurred on 3 September 2005. Defendant admitted having oral sex with the victim, but he denied having intercourse with her. He said that the victim was a call girl. The State concluded its questioning of Detective Alston after a second voir dire was conducted, and the trial court instructed the jury that "the evidence was submitted for [the] limited purpose of showing identity, motive, intent, or plan, if you so find."
Detective Rose testified that he began interviewing defendant at 11:45 p.m. on the date in question. During questioning, defendant stated: "Now, why would I be stupid goinggoing down to Durham, or Chapel Hill, or whatever, and then bring a woman up here and all that stuff and get in trouble up here, right?" Detective Rose indicated that he had not "mentioned anything about a woman being brought up from Durham, Chapel Hill, or whatever else[.]" To his knowledge, no other officer had mentioned that information to defendant either. Later in the interview, defendant admitted picking up a prostitute in Durham and bringing her back to Butner to perform oral sex for twenty-five dollars. When asked how he knew the woman was a prostitute, defendant told Detective Rose that the woman had approached his truck in Durham and asked, "What you doing?" Defendant told her that he was "looking for a real good time, that's it." Detective Rose suggested at one point during the interview that defendant was lying, and defendant responded that he "didn't hurt the girl or nothing." When asked what he did to her, defendant said, "I just got one blow job."
Detective Rose searched defendant's truck later that night or early the next day. He observed a broken pair of sunglasses on the dashboard and a tool which could have been a screwdriver, and he was involved in the seizure of a Ford hat and a work shirt with a name insignia on it from defendant's residence.
At the close of the State's evidence, defendant moved to dismiss the charges. The trial court denied the motion, and defendant did not present any evidence. After receiving the trial court's instructions, the jury deliberated and found defendant to be guilty of second degree sexual offense, crime against nature, and second degree kidnapping. The trial court arrested judgment on the second degree kidnapping offense, and it then consolidated the two remaining offenses for judgment and imposed a sentence of 110 to 141 months imprisonment. From the trial court's judgment, defendant appeals.
Defendant first contends the trial court erred by allowing the State to introduce evidence of statements he allegedly made during an interview by a police officer in a prior unrelated charge in violation of N.C.G.S. § 8C-1, Rules 403 and 404(b). He argues the State could not introduce evidence of his bad character because he did not testify or otherwise present any character evidence.
Evidence of a defendant's other crimes, wrongs, or acts is admissible under Rule 404(b) for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C.G.S. § 8C-1, Rule 404(b) (2007). "The courts of this State have been markedly liberal in admitting evidence of prior sexual misconduct of a defendant for the purposes cited in Rule 404(b)." State v. Smith, 152 N.C. App. 514, 527, 568 S.E.2d 289, 297, disc. review denied, 356 N.C. 623, 575 S.E.2d 757 (2002). The use of evidence permitted under Rule 404(b) is guided by two constraints: similarity and temporal proximity. State v. Brothers, 151 N.C. App. 71, 76, 564 S.E.2d 603, 607 (2002), disc. review denied, 356 N.C. 681, 577 S.E.2d 895 (2003). This Court reviews "a trial court's determination to admit evidence under [Rules] 404(b) and 403, for an abuse of discretion." State v. Summers, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, disc. review denied, 360 N.C. 653, 637 S.E.2d 192 (2006).
In the present case, the State offered testimony from Detective Alston about an earlier incident involving defendant. When questioned by Detective Alston, defendant described the woman as a call girl. Defendant admitted having oral sex with the woman, but he denied having intercourse with her. The earlier incident occurred approximately a year before the offenses at issue here. We note the trial court instructed the jury to consider the evidence only for the purpose of identity, motive, intent, or plan. Considering the temporal proximity of the two incidents and defendant's proclivity for a specific sexual act to the exclusion of another with women he considered to be prostitutes, we conclude the previous incident was sufficiently similar to be admissible pursuant to Rule 404(b).
Even assuming, arguendo, that the evidence should not have been admitted, we conclude that defendant was not unduly prejudiced by its admission. "The party who asserts that evidence was improperly admitted usually has the burden to show the error and that he was prejudiced by its admission." State v. Anthony, 133 N.C. App. 573, 579, 516 S.E.2d 195, 199 (1999), aff'd, 351 N.C. 611, 528 S.E.2d 321 (2000). "Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." State v. Ferguson, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893, disc. review denied, 354 N.C. 223, 554 S.E.2d 650 (2001). Here, there was overwhelming evidence of defendant's guilt. Ms. Minor spent approximately two and one-half hours during daylight hours in close proximity to the perpetrator, who did not attempt to obscure his appearance, and she positively identified defendant in open court. Defendant admitted to picking up a "prostitute" in Durham and bringing her to Butner to perform oral sex. A search of defendant's truck revealed a broken pair of sunglasses on the dashboard and a tool which could have been a screwdriver that Ms. Minor had observed. A search of his residence revealed a Ford hat and a work shirt that Ms. Minor had described the perpetrator as wearing. Even if Detective Alston's testimony regarding the prior incident had not been admitted, it is unlikely that a different result would have occurred at trial. This assignment of error is overruled.
Defendant next contends the trial court erred by refusing to dismiss the second degree sexual offense charge due to insufficiency of the evidence. He argues Ms. Minor did not testify that she was in fear of him or that she had engaged in the sexual acts without her consent or as a result of any force which he directed toward her. We disagree .
In addressing a motion to dismiss, the trial court must determine whether there is both substantial evidence of each element of the offense charged and substantial evidence that the defendant is the perpetrator. State v. Stroud, 345 N.C. 106, 111, 478 S.E.2d 476, 479 (1996), cert. denied, 522 U.S. 826, 139 L. Ed. 2d 43 (1997). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The evidence must be considered in the light most favorable to the State, drawing all reasonable inferences in the State's favor whether the evidence is direct, circumstantial, or both. State v. Israel, 353 N.C. 211, 216, 539 S.E.2d 633, 637 (2000). The elements of second degree sexual offense are: (1) a person engages in a sexual act; (2) with another person; and (3) the act is by force and against the person's will. See N.C. Gen. Stat. § 14-27.5(a) (2007). Defendant only challenges the third element of the offense. "The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." State v. Etheridge, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987). Constructive force may be proven by the State with evidence of the defendant's threats of serious bodily injury or other actions, which under the totality of the circumstances, permit an inference that the victim was compelled to submit to the sexual acts. Id.
During Ms. Minor's entire ordeal, defendant kept the handgun in his lap, in his pocket, in his hand, or within reach while directing her to submit to the sexual acts or while confining her in the truck prior to each of the sexual acts. When viewed in the light most favorable to the State, there was substantial evidence permitting a reasonable inference that Ms. Minor was compelled to submit to the sexual acts by fear or coercion. The trial court properly denied the motion to dismiss the charge of second degree sexual offense, and this argument is overruled.
No error.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).