IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-816

Filed 15 October 2024

Cumberland County, No. 18 CRS 61229

STATE OF NORTH CAROLINA

v.

MICHAEL JOHN MOORE, SR., Defendant.

Appeal by defendant from judgment entered 10 August 2022 by Judge Gale M. Adams in Cumberland County Superior Court. Heard in the Court of Appeals 12 June 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Caden W. Hayes, for the State.*
>
> *Widenhouse Law, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

DILLON, Chief Judge.

Defendant Michael John Moore, Sr., appeals from a jury's verdict convicting him of first-degree murder, first-degree kidnapping, and common law robbery. We discern error only with the denial of his motion to dismiss.

## I.     Background

On 22 August 2018, Wendy Timmons-Moore was found dead by police in the master bedroom of the residence she and Defendant were renting. Her body was tied down to the master bed. Police had entered the house to conduct a wellness check

after Ms. Timmons-Moore's family was unable to contact her for over a week. Within hours of the discovery, the police obtained a warrant to search the house.

During the search, officers found a Walmart receipt dated 10 August 2018, twelve days prior to their discovery of the body, showing a purchase for duct tape. In the master bedroom, they removed two trash bags that were covering the head of Ms. Timmons-Moore's body. Upon removing the trash bags, they observed duct tape running horizontally and vertically around the victim's head and over her mouth. The victim's hands and feet were also tied down to the bed by zip ties, electrical cords, an HDMI cable, and handcuffs. Upon conducting a DNA analysis, Defendant's DNA was found on the duct tape binding the victim's wrists and ankles, and DNA was found on the "knotted area" of the HDMI cord binding the victim's ankles. Subsequently, the officers discovered that Defendant had not paid rent for August and that the landlord had begun eviction proceedings.

On 23 August 2018, the day after Ms. Timmons-Moore's body was discovered, the Las Vegas Police Department notified the Fayetteville Police Department that they had found the victim's car in Las Vegas. Inside the car, officers found a wedding band that resembled the victim's wedding ring and the keys to the handcuffs that were used on Ms. Timmons-Moore's body. Further investigation revealed that Defendant had pawned some of Ms. Timmons-Moore's jewelry two days prior to officers finding her body.

Defendant was convicted by a jury of first-degree murder (for killing Ms. Timmons-Moore), first-degree kidnapping (for tying Ms. Timmons-Moore to the bed), and common law robbery (for stealing her personal property). The trial court sentenced Defendant to active prison terms consistent with the jury's verdicts. Defendant was sentenced to life without parole for the murder conviction, a consecutive sentence of 60 to 84 months for the kidnapping conviction, and a consecutive sentence of 12 to 24 months for the robbery conviction. Defendant appeals.

## II.    Analysis

We note Defendant's appeal is improper. However, he has petitioned our court to issue a writ of *certiorari*. In our discretion, we grant Defendant's petition in aid of our jurisdiction.

Defendant presents four arguments in this appeal. We address each argument in turn.

### A.    Motion to Suppress

Defendant first argues the trial court erred in denying his motion to suppress the evidence collected during the 22 August 2018 search. Specifically, Defendant argues that the trial court inappropriately expanded the inevitable discovery doctrine by relying on the possible discovery of Ms. Timmons-Moore's body by *civilians* unconnected to law enforcement. For the reasoning below, we disagree.

Our Supreme Court has held that

> evidence which would otherwise be excluded because it was illegally seized may be admitted into evidence if the State proves by a preponderance of the evidence that the evidence would have been inevitably discovered by the law enforcement officers if it had not been found as a result of the illegal action.

*State v. Pope*, 333 N.C. 106, 114 (1992).

In this case, regardless of whether the evidence at the residence was initially obtained illegally, we conclude that the trial court properly applied the inevitable discovery doctrine. First, we note that our Supreme Court in *Pope* held that the inevitable discovery doctrine applied where the illegally obtained evidence would have been inevitably discovered by civilians and turned over to law enforcement. *See id.* at 114–15. Here, there was ample evidence presented from which the trial court could determine that Ms. Timmons-Moore's body would have been inevitably discovered by either her family or by the landlord who had begun eviction proceedings.

Further, there was evidence presented which showed that Defendant did not have standing to challenge the search of the residence, as there was evidence that he had permanently abandoned the residence. *See State v. McKinney*, 361 N.C. 53, 56 (2006) (holding that "[a] reasonable expectation of privacy in real property may be surrendered . . . if the property is permanently abandoned."). Thus, we conclude the motion to suppress was properly denied.

B.     Motion to Dismiss

Next, Defendant argues that the trial court erred in denying his motion to dismiss the charge of kidnapping because it violates his constitutional right against double jeopardy. Specifically, Defendant argues that the State failed to introduce substantial evidence that the restraint of Ms. Timmons-Moore's body was independent and apart from the inherent commission of the murder. The State, however, argues that Defendant waived his right to review his double jeopardy claim since he failed to raise the issue at sentencing.

"[T]he Double Jeopardy Clauses of the North Carolina and United States Constitutions only protect against multiple *punishments* for the same offense." *State v. Stroud*, 345 N.C. 106, 113 (1996) (emphasis in original). Thus, merely submitting both the kidnapping charge and the murder charge to the jury does not subject Defendant to multiple punishments. *See id.* It may be that a jury would have convicted Defendant of one crime but not the other. Instead, double jeopardy would be an issue during sentencing only after the jury convicted Defendant of both crimes.

At trial, Defendant moved to dismiss the kidnapping charge at the close of the State's evidence and again at the close of all evidence, but Defendant failed to raise the issue during his sentencing. In our discretion, to the extent Defendant has waived appellate review of this issue, we invoke Rule 2 of our Rules of Appellate Procedure, which allows our Court to consider the issue. *See State v. Campbell*, 369 N.C. 599, 603 (2017) (recognizing that Rule 2 is invoked only in exceptional circumstances).

Our Supreme Court has held that "[t]o avoid constitutional violations related to double jeopardy, the confinement, restraint, or removal element [of a kidnapping charge] 'requires a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony.' " *State v. Stokes*, 367 N.C. 474, 481 (2014) (citing *State v. Irwin*, 304 N.C. 93, 103 (1981)).

Defendant contends that *State v. Prevette* is controlling in this case. 317 N.C. 148 (1986). In *Prevette*, the victim's hands, feet, and knees were bound, and the victim's mouth was bound and gagged, suffocating her to death. *Id.* at 160–61. Our Supreme Court found that the victim's death would not have occurred without the restraints and that "the restraint of the victim which resulted in her murder [was] indistinguishable from the restraint used by the State to support the kidnapping charge." *Id.* at 157. Thus, the Court concluded that "[b]ecause the State failed to produce substantial evidence of restraint, independent and apart from the murder . . . the trial court improperly failed to allow defendant's motion to dismiss the charge of first[-]degree kidnapping." *Id.* at 158.

Conversely, the State contends that *Stroud* controls. In *Stroud*, the victim was struck dozens of times during an argument that spanned six or seven hours. 345 N.C. at 112. The accumulation of injuries affected the victim's ability to move and eventually incapacitated her. *See id.* Our Supreme Court found that some of the blows merely immobilized and restrained the victim, while other blows caused her death. *See id.* Thus, the Court concluded that since not all the blows were necessary

conditions of the murder, there was sufficient evidence that the restraint and death blows were separate and independent of each other, permitting the Defendant to be charged for both murder and kidnapping. *See id.*

Relying on *Stroud*, the State argues that the manner and degree of the restraint was excessive. More specifically, not all the bindings were necessary to kill the victim. The State's argument is compelling. However, we conclude the facts in the current case are analogous to *Prevette*.

Here, evidence shows that because Ms. Timmons-Moore's hands, feet, and arms were restrained, she could not remove the bags that caused her suffocation, just as the victim in *Prevette*. There is no evidence that Ms. Timmons-Moore died from blows to her body, but rather the evidence shows that she died by suffocation. It may be that the restraining of Ms. Timmons-Moore's legs/feet was not inherent in causing her suffocation. That is, she would have died anyway without *that* restraint. However, the victim's legs/feet were restrained in *Prevette* as well. And we are bound by our Supreme Court's holding in that case that the binding of the legs/feet were inherent in the murder by suffocation.

Giving the State every reasonable inference, we must conclude, based on our Supreme Court's holding in *Prevette*, that the State failed to produce substantial evidence that Defendant restrained the victim independently and apart from the murder. Thus, the trial court committed reversible error, and we vacate Defendant's sentence on the kidnapping charge.

C.     Inclusion of Testimony

Defendant moved to exclude evidence of a prior incident where Ms. Timmons-Moore's mother testified that Defendant put his hands around her daughter's neck. Defendant objected to this evidence under North Carolina Rules of Evidence 403 and 404(b), N.C.G.S. §§ 8C-1, R. 403,404(b), but the objection was overruled.

We conclude that Defendant failed to meet his burden of showing that he was prejudiced by that testimony. Based on the overwhelming evidence of Defendant's guilt apart from that testimony, we conclude there is no reasonable possibility that the outcome of Defendant's trial would have been any different had the jury *not* heard the challenged testimony.

D.     Exclusion of Defendant's Testimony

Lastly, Defendant argues that the trial court abused its discretion by sustaining certain evidentiary objections by the State in which the trial court excluded certain testimony. After careful review of the record, we agree with the State that Defendant failed to properly raise his argument as a constitutional issue in the trial court. Therefore, those arguments are waived on appeal. *See State v. Hunter*, 305 N.C. 106, 112 (1982). In any event, based on our review of the record, we further conclude that the trial court did not commit reversible error by sustaining the evidentiary objections.

III.     Conclusion

Because binding precedent compels us to conclude that Defendant's restraint of Ms. Timmons-Moore was inherent in the murder, we vacate Defendant's sentence for his kidnapping conviction.  We, otherwise, conclude Defendant received a fair trial, free of reversible error and, accordingly, leave undisturbed the portion of the judgment sentencing him to life without parole for the murder conviction and to 12 to 24 months for the robbery conviction.

NO ERROR IN PART, VACATED IN PART.

Judge GORE concurs.

Judge THOMPSON dissents by separate opinion.

THOMPSON, Judge, dissenting.

I disagree with the majority that the State failed to introduce substantial evidence of a restraint of the victim's body independent of and apart from the inherent commission of the victim's murder, in order to support the conviction for first-degree kidnapping. For this reason, I respectfully dissent.

A motion to dismiss due to insufficiency of the evidence "presents a question of law and is reviewed *de novo* on appeal." *State v. Norton*, 213 N.C. App. 75, 78, 712 S.E.2d 387, 390 (2011). In making this determination, we "consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). As the majority notes, "[t]o avoid constitutional violations related to double jeopardy, the confinement, restraint, or removal element requires a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Stokes*, 367 N.C. 474, 481, 756 S.E.2d 32, 37 (2014).

I am persuaded by the State's argument, set forth in their appellate brief, that a coffee cup and ashtray filled with cigarette butts creates a "reasonable inference that [d]efendant sat and smoked cigarettes while his wife l[ay] there hopeless, *but alive*." Indeed, evidence proffered at trial established that the victim had duct tape over her mouth and around her head, was bound to the bed by zip ties and electrical

cords around her ankles, had handcuffs on her hands, zip ties binding her wrists to her knees, and a brown electrical cord wrapped around her neck and the bed's headboard.

The sheer number of restraints exercised against the victim in the present case, coupled with evidence that there were multiple cigarettes, a cup of coffee, and a chair near the bed where the victim was discovered, creates a reasonable inference that defendant first kidnapped the victim, restrained her for some unknown period of time, and *then* after having kidnapped and restrained the victim, at a later point in time, proceeded to place a bag over her head while her hands were handcuffed, killing her by asphyxiation.

In the present case, binding the victim's hands and placing a bag over her head were the restraints necessary in the commission of the underlying felony, murder by asphyxiation. However, there were additional restraints exerted against the victim— a brown electrical cord wrapped around her neck and the bed's headboard, and zip ties and electrical cords wrapped around her ankles—which again, coupled with evidence of a chair near the bed, multiple cigarette butts, and a cup of coffee, creates a reasonable inference that defendant exerted a restraint separate and apart from that which was inherent in the commission of the murder, by first kidnapping and restraining the victim for some unknown period of time while he smoked cigarettes and drank coffee, and after having done so, placed the final restraint, a bag, over her head.

*THOMPSON, J., dissenting*

After giving the State the benefit of *every* reasonable inference and resolving any contradictions in its favor, I would conclude that the evidence of the additional restraints of the victim—the zip ties and electrical cords wrapped around her ankles, and electrical cord around her neck—restraints separate and apart from the handcuffs on her hands and the bag over her head— which, again, were the restraints necessary to commit murder by asphyxiation in the present case—were sufficient to overcome defendant's motion to dismiss due to insufficiency of the evidence. For this reason, I would affirm defendant's first-degree kidnapping conviction, and respectfully dissent.