STATE OF NORTH CAROLINA v. DOUGLAS PAUL OLSON

No. 283PA90

(Filed 10 January 1992)

1. **Criminal Law § 616 (NCI4th) — motion for dismissal — substantial evidence test**

On a defendant's motion for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. What constitutes substantial evidence is a question of law for the court. Substantial

STATE v. OLSON

[330 N.C. 557 (1992)]

evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

**Am Jur 2d, Criminal Law § 512.**

**2. Criminal Law § 607 (NCI4th) — motion to dismiss — consideration of evidence**

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal.

**Am Jur 2d, Criminal Law § 512.**

**3. Homicide § 4 (NCI3d) — first degree murder defined**

Murder in the first degree is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation.

**Am Jur 2d, Homicide §§ 45, 50-52.**

**4. Homicide § 4.3 (NCI3d) — premeditation and deliberation defined**

Premeditation means the perpetrator thought out the act beforehand for some period of time, however short, but no particular amount of time is necessary. Deliberation means the perpetrator carried out an intent to kill in a cool state of blood and not under the influence of a violent passion or sufficient legal provocation. In this context, the term "cool state of blood" does not mean the perpetrator was devoid of passion or emotion.

**Am Jur 2d, Homicide § 52.**

**5. Homicide § 18 (NCI3d) — premeditation and deliberation — circumstances considered**

Some of the circumstances from which premeditation and deliberation may be implied are (1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows

after the deceased has been felled and rendered helpless, and (7) the nature and number of the victim's wounds.

**Am Jur 2d, Homicide § 52.**

**6. Homicide § 21.5 (NCI3d) — first degree murder — premeditation and deliberation — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of first degree murder on the theory of premeditation and deliberation where it tended to show that defendant broke and entered the victim's house; in the course of rummaging through the victim's belongings, defendant found a .22 caliber revolver and set it out within his reach; when the victim arrived home early from work, defendant picked up the revolver, came out of the bedroom, moved through the hall toward the front door, and fired six shots into the victim's body; and defendant admitted in his statements to officers that he kept shooting at the deceased as he fell.

**Am Jur 2d, Homicide § 439.**

**7. Robbery § 1.1 (NCI3d) — armed robbery — threat or use of deadly weapon — continuous transaction**

To be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstance as to be part of one continuous transaction. Where a continuous transaction occurs, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial.

**Am Jur 2d, Robbery § 5.**

**8. Robbery § 4.3 (NCI3d) — armed robbery — sufficiency of evidence**

The State introduced substantial evidence of defendant's guilt of robbery with a dangerous weapon where such evidence tended to show that defendant broke into the victim's residence and collected a number of items such as a pair of binoculars and four long guns, normally stored under a bed, which he placed near the front door on a chair in preparation for their removal; the victim's gold wedding band and a silver-coated penny which belonged to the victim were discovered in a pillowcase in the possession of defendant after his arrest; and in the process of escaping from the victim's home and removing

STATE v. OLSON

[330 N.C. 557 (1992)]

these items from the victim's possession, defendant fatally shot the victim with a .22 caliber handgun. This evidence was sufficient to support a reasonable finding that defendant's use of the gun was so joined by time and circumstances to the taking as to make the use of the gun and the taking parts of one continuous transaction.

**Am Jur 2d, Robbery § 5.**

9. **Criminal Law § 468 (NCI4th)— first degree murder—jury argument—request for conviction based on premeditation and deliberation**

The prosecutor's jury arguments in this first degree murder case that he would prefer that the jury find defendant not guilty and turn him loose rather than find him guilty of second degree murder, that he did not want the jury "to have to come down to any watered-down theory like felony murder theory," and that the jury should not find defendant guilty of "less than cold-blooded premeditated deliberated murder" were not inflammatory but were proper arguments urging the jury to return a conviction for first degree murder based on premeditation and deliberation. In any event, they were not so grossly improper as to require the trial court to intervene *ex mero motu.*

**Am Jur 2d, Homicide §§ 463, 464.**

ON a writ of certiorari to review judgments entered on 8 January 1987 by *Beaty, J.,* in Superior Court, McDOWELL County. Heard in the Supreme Court 17 October 1991.

*Lacy H. Thornburg, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia Devine, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Justice.

The defendant was tried upon proper indictments charging him with the offenses of murder in the first degree, robbery with a dangerous weapon, felonious larceny and two counts of felonious breaking or entering. The jury found the defendant guilty of all offenses as charged. At the conclusion of a capital sentencing proceeding, the jury recommended a sentence of life imprisonment

be entered for the conviction of murder in the first degree. The trial court imposed a life sentence for that offense pursuant to the jury's recommendation. The trial court also entered judgments sentencing the defendant to terms of imprisonment for the other offenses for which he had been convicted. The defendant failed to perfect his appeal in a timely manner. On 29 October 1990, this Court entered an order allowing the defendant's petition for a writ of certiorari to review the judgments entered by the trial court.

The defendant brings forward three assignments of error. First, he contends the trial court erred by denying his motion to dismiss the charge of first-degree murder to the extent that it was based on the theory of premeditation and deliberation. Second, he argues the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon and by denying his motion to dismiss the charge of first-degree murder to the extent that it was based on the underlying felony of robbery with a dangerous weapon. Finally, he maintains the trial court erred by not intervening *ex mero motu* to censor improper jury arguments of the prosecutor. We conclude that the defendant's assignments of error are without merit.

The State's evidence tended to show that Jan Suttles and her husband James Suttles had lived at the same address in Old Fort, North Carolina, for approximately twelve years. On the morning of 19 September 1986, James Suttles left for work between 6:30 a.m. and 6:40 a.m. Jan Suttles testified that she received a call at work that day advising her to return home, at which time she found out her husband had been shot. She went home and noted that the rear window to the den was torn open and broken. Several items were missing from the house, including James Suttles' gold chain, his watch and his grandfather's knife, as well as his wedding band and some of her rings.

Tommy Ellison testified that he lived in Old Fort, about three-quarters of a mile from the Suttles residence. On 19 September 1986, he and his wife came home at about 7:30 p.m. When he opened the front door, he saw mud on the floor that had not been there when he left. He closed the door and called the police. He then went to the back of the house, where he discovered that the glass in the back door was broken out and a .12 gauge shotgun and a metal box containing personal papers were missing.

Sam Porter testified that on 19 September 1986 he was rebuilding a back porch of a house approximately 200 feet from the Suttles residence. He saw the defendant running away from the Suttles residence. The defendant was dressed in blue jeans and a T-shirt and came within ten feet of Porter. The defendant did a "double take" when he saw Porter, but then kept on running until he was out of sight.

SBI Special Agent Bruce Jarvis testified that he received a call to go to Old Fort at approximately 4:25 p.m. on 19 September 1986. On his way to Old Fort, Agent Jarvis drove on Interstate 40 where he noticed a hitchhiker. The man was wearing jeans and a pullover shirt and had bushy brown hair. When Agent Jarvis arrived at the Suttles residence, he was given a general description of the suspected perpetrator. The description fit the hitchhiker he had seen on Interstate 40. Jarvis immediately drove back to Interstate 40 where he found the hitchhiker he had seen earlier; the hitchhiker was the defendant, Douglas Paul Olson.

Upon inquiry, the defendant gave Agent Jarvis a false name and date of birth. The defendant agreed to accompany Agent Jarvis to the police department. He was carrying a pillowcase which was placed in the back of Agent Jarvis' car. Agent Jarvis noticed that the defendant's jeans and hiking boots were wet. At the police department, the defendant insisted he knew nothing of any crime that had been committed. When Agent Jarvis mentioned that the defendant might be photographed or placed in a lineup, the defendant became "aggressively nervous." Agent Jarvis read the defendant his *Miranda* rights and, thereafter, the defendant gave two statements.

In his first statement, the defendant said that he had hitchhiked as far as the Old Fort exit on Interstate 40. He walked off the Interstate and sat down to drink a bottle of wine. Then he walked back towards Old Fort with the intention of breaking into "something" because he needed money. He described breaking into the Suttles residence and rummaging through drawers and closets. He laid three or four long guns on a chair in the living room. He found a .22 caliber revolver in a drawer next to a bed. He also found pennies, some loose and some in a bag. The defendant stated that he then heard the front door open. He grabbed the revolver, walked around the corner from the bedroom, and started shooting at the man in the front doorway. He fired several times.

When the man fell, the defendant dropped the gun and ran out the back door of the house. The defendant stated that he had not actually taken anything from the Suttles residence.

The defendant made a second statement, which was similar to the first in most respects. He again denied having removed any items from the Suttles residence. However, Agent Jarvis inventoried the items in the defendant's pillowcase, which included James Suttles' wedding band and a silver-coated penny. Jan Suttles identified these items at trial as belonging to her husband.

Mika Elliot testified that he was the SBI mobile crime laboratory operator for the Western District of North Carolina. On 19 September 1986, he went to the Old Fort police department where he conducted a gunshot residue test upon the defendant's hands. The results were consistent with the defendant having fired a gun. Agent Elliot then went to the crime scene at the Suttles residence. During his examination, he found one spent projectile from a .22 caliber handgun in the living room, lying behind a chair. Agent Elliot testified that the projectiles taken from James Suttles body were also from a .22 caliber handgun.

Deputy Sheriff Gene Patrick testified that he investigated the break-in and larceny at the Ellison residence on 19 September 1986. He testified that when he spoke with the defendant, the defendant stated that he had broken into the Ellison residence after he had shot James Suttles. The defendant told Deputy Patrick that he had broken the glass in the door, entered the residence, and taken a loaded shotgun and a metal box. He blew open the box with the shotgun. Then he reloaded the shotgun intending to shoot himself, but he could not bring himself to do so. The defendant took Deputy Patrick to the spot on Interstate 40 where he had left the gun and the metal box. At trial, Tommy Ellison identified both the gun and the metal box as having been taken from his home.

Dr. James Bowen testified that he was the regional medical examiner. He performed an autopsy on the body of James Suttles on 20 September 1986. Dr. Bowen discovered a total of six gunshot wounds and recovered four bullets. The gunshot wounds were to the head, the shoulder, the chest, the wrist and the hand. In Dr. Bowen's opinion, two of the wounds would have been fatal. Dr. Bowen testified that James Suttles had probably died within about

five minutes, though he would not have been rendered unconscious immediately.

At the close of the State's evidence, and again at the close of all the evidence, the defendant moved to dismiss the charge of first-degree murder to the extent that it was based on the theory of premeditation and deliberation. The motions were denied. The defendant argues that it was error for the trial court to deny these motions because there was no substantial evidence to support a reasonable inference of premeditation and deliberation.

[1, 2] On a defendant's motion for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *Id.*

[3, 4] "Murder in the first degree is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Hamlet*, 312 N.C. 162, 169, 321 S.E.2d 837, 842 (1984). Premeditation means the perpetrator thought out the act beforehand for some period of time, however short, but no particular amount of time is necessary. *Id.* Deliberation means the perpetrator carried out an intent to kill in a cool state of blood and not under the influence of a violent passion or sufficient legal provocation. *Id.* at 170, 321 S.E.2d at 842-43. In this context, the term "cool state of blood" does not mean the perpetrator was devoid of passion or emotion. *Vause*, 328 N.C. at 238, 400 S.E.2d at 62. "One may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time." *Id.*

**[5]** Premeditation and deliberation are mental processes which are ordinarily not susceptible to proof by direct evidence. In a majority of cases, they must be proved by circumstantial evidence. Some of the circumstances from which premeditation and deliberation may be implied are (1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds. *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986).

**[6]** In the present case, there was evidence showing an absence of provocation on the part of the deceased; the evidence tended to show that the defendant shot James Suttles without warning as Suttles entered his home when returning from work. The defendant argues that the early return of the deceased from work so startled and panicked the defendant as to result in the "actual provocation" of the killing. We find this argument without merit. The evidence tended to show that in the course of rummaging through the deceased's belongings, the defendant found a .22 caliber revolver and set it out within his reach. When the deceased arrived home early from work, the defendant picked up the revolver, came out of the bedroom, moved through the hall towards the front door, and fired six shots into the deceased's body. In his statement to law enforcement officers, the defendant admitted that he kept on shooting at the deceased until the gun was empty, and that the victim fell as the defendant was shooting. The defendant then proceeded to leave the Suttles residence and break into the Ellisons' house on the way back to Interstate 40. Such evidence was substantial evidence tending to show that the defendant was acting in a cool state of blood after premeditation and deliberation.

Also, the evidence tended to show that the defendant dealt lethal blows after his victim had been felled and rendered helpless. Dr. Bowen testified that there were six gunshot wounds to the head, the shoulder, the chest, the wrist and the hand. Two of the wounds were fatal in nature. He also testified that James Suttles probably lived for about five minutes after the shooting. The defendant admitted in his statements to officers that he kept

shooting at the deceased as he fell. This evidence, standing alone, constituted substantial evidence tending to show premeditation and deliberation. *State v. Fisher*, 318 N.C. 512, 518, 350 S.E.2d 334, 338 (1986). Therefore, the trial court did not err in denying the defendant's motion to dismiss the murder charge to the extent that it was based on the theory of premeditation and deliberation.

The defendant next contends that it was reversible error for the trial court to deny his motion to dismiss the charge of robbery with a dangerous weapon and to deny his motion to dismiss the charge of first-degree murder to the extent it was based on the underlying felony of robbery with a dangerous weapon. We note at the outset that the defendant was convicted of first-degree murder only on the theory of premeditation and deliberation. Therefore, even if the evidence of robbery with a dangerous weapon had been insufficient to support the submission of the felony murder theory to the jury, prejudicial error would not have resulted. As the jury did not find the defendant guilty of any charges based on a felony murder theory, any possible error in its submission to the jury would be harmless. *State v. Green*, 321 N.C. 594, 606, 365 S.E.2d 587, 594, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988).

[7]  Under N.C.G.S. § 14-87(a), robbery with a dangerous weapon is: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Beatty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982). To be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction. *State v. Hope*, 317 N.C. 302, 306, 345 S.E.2d 361, 364 (1986). Where a continuous transaction occurs, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial. *Green*, 321 N.C. at 605, 365 S.E.2d at 594.

[8]  Applying the foregoing principles to the case *sub judice*, we conclude that the State introduced substantial evidence of the defendant's guilt of robbery with a dangerous weapon. The evidence tended to show that the defendant broke into the Suttles residence and collected a number of items such as a pair of binoculars and four long guns, normally stored under a bed, which he placed near

the front door on a chair in preparation for their removal. Also, the victim's gold wedding band and a silver-coated penny which belonged to the victim were discovered in a pillowcase in the possession of the defendant after his arrest. In the process of escaping from the victim's home and removing these items from the victim's possession, the defendant used a .22 caliber handgun and fatally wounded James Suttles. This evidence was sufficient to support a reasonable finding that the defendant's use of the gun was so joined by time and circumstances to the taking as to make the use of the gun and the taking parts of one continuous transaction.

The defendant argues that this case is similar to *State v. Richardson*, 308 N.C. 470, 302 S.E.2d 799 (1983). In *Richardson*, the undisputed evidence showed that an altercation ensued between the defendant and the victim, during which the defendant struck the victim with a stick. The victim threw his duffel bag, which contained his wallet, at the defendant in an effort to protect himself during the fight. The evidence conclusively showed that the defendant did not have the intent at that time to deprive the victim of his property. It was only later, after the victim had left the scene, that the defendant discovered the victim's wallet as he rummaged through the duffel bag. We indicated that the use of a dangerous weapon by the defendant in *Richardson* was separate and distinct from the taking of the victim's property and that they were not parts of one continuous transaction. The facts in the present case are not similar in any meaningful way to those presented in *Richardson*. Therefore, the defendant's motions to dismiss the charge of robbery with a dangerous weapon and of first-degree murder based on the underlying felony of robbery with a dangerous weapon were properly denied by the trial court.

[9] Finally, the defendant maintains that the prosecutor made prejudicial statements during his final argument at the guilt-innocence determination phase which require a new trial. These statements were not objected to at trial. Therefore, our review is limited to the narrow question of whether the prosecutor's statements were so grossly improper as to require the trial judge to correct them *ex mero motu*. *State v. Hamlet*, 312 N.C. 162, 172, 321 S.E.2d 837, 844 (1984); *State v. Craig*, 308 N.C. 446, 302 S.E.2d 740, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983).

The defendant takes exception to statements advanced by the prosecutor during closing arguments concerning the possible ver-

STATE v. OLSON

[330 N.C. 557 (1992)]

dicts the jury could reach in the present case. He argues that these statements were inflammatory and improperly influenced the jurors in their deliberations. In support of this contention, he points to the prosecutor's statement to the jury that "before you find Mr. Olson guilty of any second degree murder, I'd rather you just come out here and find him not guilty and turn him loose and let the deputy sheriff put him back on Interstate 40 to go his merry way." The prosecutor further stated that he did not want the jury "to have to come down to any watered-down theory like felony murder theory." The prosecutor indicated that the jury should not find the defendant guilty of "less than cold-blooded premeditated deliberated murder."

It is well settled that counsel is given wide latitude in arguing to the jury and may argue facts which have been presented at trial as well as any reasonable inferences which may be drawn from them. *Hamlet*, 312 N.C. at 172, 321 S.E.2d at 844. Further, it is proper during jury argument for the prosecutor to ask for the highest degree of conviction and the most severe punishment available. *Id.* at 174, 321 S.E.2d at 845; *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979). In the present case, the prosecutor urged the jury to return a conviction for murder in the first degree based on premeditation and deliberation. His statements in this regard were within the discretion afforded him during jury argument. *See State v. Rogers*, 323 N.C. 658, 374 S.E.2d 852 (1989). Certainly, they were not so grossly improper as to require the trial court to intervene *ex mero motu*.

The defendant received a fair trial free of prejudicial error.

No error.