STATE OF NORTH CAROLINA v. BRIAN ELGIN LAWS

No. 35A96

(Filed 7 March 1997)

### 1. Homicide § 253 (NCI4th)— first-degree murder—malice— premeditation and deliberation—sufficiency of evidence

In this prosecution for first-degree murder in which defendant contended that he killed the victim in self-defense in response to a threatened homosexual assault, the State's evidence was sufficient to support an inference that defendant acted with malice where it tended to show that defendant used at least two knives and a pair of scissors to stab the victim. Furthermore, the State's

evidence was sufficient to support inferences of premeditation and deliberation by defendant where it tended to show that the victim was brutally stabbed approximately eighteen times and was bludgeoned with a ceramic vase; defendant continued to inflict additional stab wounds after the victim was severely disabled and had lost consciousness; when a knife blade broke off inside the victim, defendant made a conscious effort to continue his attack with a pair of scissors; defendant immediately attempted to conceal evidence, stole the victim's jewelry and car, and sold them for cash to buy drugs; defendant did not find the first knife he used in the victim's bedroom but found the knife in a closet and took the knife into the bedroom with the intent to stab the victim; the victim struggled to get to the front door, but defendant further attacked him near the door and pushed the door closed to prevent the victim's escape; and defendant beat the victim with a vase while the victim was face down on the floor rather than while the victim was coming toward him as defendant claimed.

**Am Jur 2d, Homicide §§ 263-268.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

2. **Evidence and Witnesses § 264 (NCI4th)— murder trial— victim's homosexuality—not pertinent character trait**

In a prosecution for first-degree murder in which defendant contended that he killed the victim in self-defense in response to a threatened homosexual assault, evidence offered by defendant that the victim had a reputation for being a homosexual was not evidence of a pertinent character trait within the meaning of Rule of Evidence 404(a)(2) and was properly excluded by the trial court, since an individual's sexual orientation bears no relationship to the likelihood that such individual would threaten a sexual assault. N.C.G.S. § 8C-1, Rule 404(a)(2).

**Am Jur 2d, Evidence § 373; Homicide §§ 301, 303, 307.**

3. **Criminal Law § 478 (NCI4th Rev.)— prosecutor's objections—cross-examination of defense witnesses—no prosecutorial misconduct**

The form of the prosecutor's objections and the prosecutor's conduct during cross-examination of defense witnesses did not

amount to prosecutorial misconduct which denied defendant a fair trial.

**Am Jur 2d, Trial §§ 497, 499, 500.**

4. **Evidence and Witnesses §§ 2172, 2293 (NCI4th)— expert testimony—rage reaction—exclusion of personal experience**

In a prosecution for first-degree murder in which defendant contended that he killed the victim in self-defense in response to a threatened homosexual assault, the trial court did not err by refusing to permit defendant's expert witness to testify about a "rage reaction" experienced by the witness in his personal life since (1) the witness properly gave his expert opinion that a rage reaction could possibly have caused defendant to kill the victim and explained his opinion by relating the general characteristics exhibited by those who experience rage reaction and by enumerating the facts upon which his opinion was based; (2) the excluded testimony was not admissible as a basis for the witness's expert opinion under Rule of Evidence 703 where the witness testified that the basis for his opinion was his interview with defendant and defendant's testimony in court; and (3) the excluded testimony was irrelevant as defendant did not show how a rage reaction experienced by someone other than defendant makes it more or less probable that defendant experienced a rage reaction. N.C.G.S. § 8C-1, Rule 703.

**Am Jur 2d, Expert and Opinion Evidence §§ 37, 38, 182, 360; Homicide § 396.**

5. **Evidence and Witnesses § 706 (NCI4th)— pretrial statement—exculpatory portions—substantive evidence—limiting instruction not plain error**

Assuming *arguendo* that the exculpatory portions of defendant's pretrial statement to the police were substantive evidence, the trial court did not commit plain error by instructing the jury that defendant's pretrial statement could not be considered as substantive evidence where defendant's testimony at trial presented directly to the jury the same evidence that defendant contends was exculpatory in his pretrial statement; the jurors were instructed that they could use defendant's pretrial statement to determine whether to believe defendant's trial testimony; and

STATE v. LAWS

[345 N.C. 585 (1997)]

defendant thus received the benefit of any strength his pretrial statement could give his testimony at trial.

**Am Jur 2d, Homicide § 340; Trial § 1283.**

**6. Homicide § 612 (NCI4th)— self-defense—instructions— reasonable belief in need to kill**

The trial court did not commit plain error by instructing the jury that perfect and imperfect self-defense require the defendant to have a reasonable belief in the need to kill in self-defense.

**Am Jur 2d, Homicide § 519.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Farmer, J., at the 21 August 1995 Criminal Session of Superior Court, Durham County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 9 September 1996.

*Michael F. Easley, Attorney General, by Gail E. Weis, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 19 July 1993 for the first-degree murder of Earl Wayne Handsome. The defendant was tried noncapitally, and the jury found defendant guilty of first-degree murder on the theory of premeditation and deliberation. By judgment and commitment dated 29 August 1995, Judge Farmer sentenced the defendant to a term of life imprisonment.

The State's evidence tended to show that Earl Handsome died on 27 June 1993 as a result of multiple stab wounds to his chest and back. Richard Jordan, a friend of the victim's, discovered the body and called 911. Investigator Jerry Wilkerson, a thirty-one year veteran of the Durham Police Department, was assigned to the case. After

interviewing potential witnesses at the scene, Wilkerson discovered that the victim's car was missing. Sometime during the early morning hours of 28 June 1993, Officer Daniel Massenberg of the Durham Police Department spotted the victim's car heading toward downtown Durham. After calling for backup, the car was stopped, and four individuals were removed from the car and taken into custody for questioning. Wilkerson was informed that the individuals found in the victim's car stated that they had rented the car from Brian Laws, the defendant.

Investigator Wilkerson and some uniformed officers went to the defendant's residence and knocked on the door. Defendant answered the door and allowed Wilkerson to enter the apartment. While Wilkerson was talking with the other people in the apartment, the defendant said, "I did it." Wilkerson asked the defendant what he had done, and the defendant responded, "I killed him." When asked who he had killed, the defendant responded, "a man." Wilkerson transported the defendant to police headquarters and informed him of his *Miranda* rights. The defendant waived his *Miranda* rights and confessed to the murder of Earl Handsome. The State subsequently entered defendant's confession into evidence.

The defendant, in his confession, stated that on the night of the murder, he was walking home when the victim drove up and started a conversation. The defendant went to the victim's apartment and drank vodka and smoked marijuana with the victim. The defendant and the victim then watched television together in the victim's bedroom. According to the defendant, the victim made several sexual advances toward him. After trying unsuccessfully to stop the victim's advances, the defendant grabbed a knife that they had been using in the bedroom to chop up the marijuana and stabbed the victim in the neck. The defendant stated that he then ran for the door and tried to open it, but the victim pushed the door closed. The defendant grabbed a ceramic vase and hit the victim twice, knocking the victim to the ground. When the victim started to get back up, the defendant ran to the kitchen, got another knife and started stabbing the victim again. When that knife broke off inside the victim, the defendant got a pair of scissors and continued stabbing the victim. The defendant stated that the first thing that came to his mind after the attack was to get rid of the fingerprints. The defendant attempted to clean his fingerprints off the knives, then took the victim's car keys and left the apartment. Finally, the defendant stated that he sold six pieces of jewelry that he found in the car, rented the victim's car to an acquain-

tance and used the proceeds from the jewelry and car rental to buy drugs.

Dr. Deborah Radisch, an expert in forensic pathology, performed an autopsy on the victim. The autopsy revealed several blunt-force injuries on the scalp and at least eighteen stab wounds to the victim's chest and back. The blunt-force injuries consisted of numerous abrasions and lacerations and a fracture of the bones at the base of the skull. These injuries were severe enough to cause a loss of consciousness for a short period of time. Dr. Radisch determined that the victim died from a loss of blood due to severe damage to his lungs and heart caused by multiple stab wounds to the chest.

Della Owens-McKinnon, an identification technician trained and certified to analyze bloodstain patterns, testified that her examination of the crime scene revealed that most of the bloodstains were found in the bedroom. Owens-McKinnon observed "overcast patterns" on the bedroom wall over the bed. This type of bloodstain pattern occurs when blood is being thrown off the tip of an object as it is being swung back and forth. Owens-McKinnon also identified "back patterns" on the bedroom wall. Owens-McKinnon testified that back spatter occurs as an object is being released or pulled out of the body. The bedroom stains reflected the infliction of a minimum of three or four blows in the area of the bed.

Owens-McKinnon noted "impact patterns" at the entrance to the bedroom which indicated to her that two or three blows were inflicted at that location. Owens-McKinnon also observed a trail of dripping blood and bloody handprints along the hallway leading to large "transfer patterns" and smudges on the front door. Owens-McKinnon testified that she believed these stains occurred as someone was attempting to leave the apartment. Finally, Owens-McKinnon observed impact spatters on the front door which indicated the infliction of a minimum of two to three blows at that location.

Special Agent Peter Deaver, an expert in the field of forensic serology, testified that he was able to remove a small amount of blood from a pair of shorts collected from the defendant's residence. Agent Deaver determined that the blood collected from the defendant's shorts was human blood and that its genetic markers were consistent with the genetic markers for Earl Handsome's blood.

Special Agent John Bendure, an expert in the field of fiber analysis and physical matches, examined a button found near the victim's

body and clothes collected from the defendant's residence. Agent Bendure testified that the button had been forcefully removed and that in his opinion, the button could have come from a pair of shorts collected from the defendant. Agent Bendure noted that the button was the same type of button as the button on the right rear pocket of the shorts, and that the yarn on the button and the attachment thread had the same characteristics and sewing pattern as the button found on the shorts.

Special Agent Joyce Petzka, an expert in the field of fingerprint identification, examined fingerprints collected at the crime scene and known fingerprint samples for the defendant and the victim. Agent Petzka examined the front door, two pieces of sheetrock and a piece of door molding taken from the victim's apartment. Agent Petzka testified that she found four fingerprints belonging to the defendant on one of the pieces of sheetrock, two of the defendant's fingerprints on the door molding and two of the defendant's palm prints on the inside of the front door. In Agent Petzka's opinion, the palm prints were made by using force with the entire hand to push on the door (which in this case would have caused the front door to close).

The defendant testified that he had smoked marijuana, had consumed alcohol and had used cocaine prior to going to the victim's apartment. Once at the victim's apartment, defendant began watching television in the victim's bedroom. The victim entered the bedroom carrying a tray with marijuana, rolling paper and a large knife to cut the marijuana. The defendant and the victim smoked marijuana and watched television together. The defendant stated that the victim made a sexual advance toward him and that he told the victim, "I don't do that," or "I don't like that." The victim then grabbed the defendant's belt as if trying to undo defendant's pants. The defendant tried to push the victim away, but the victim would not let go. The defendant testified that he was afraid he was going to be raped, so he grabbed the knife off the tray and stabbed the victim in order to escape. As in his statement, defendant testified that the victim attempted to prevent him from leaving, so he hit the victim with a vase and continued to stab the victim. On cross-examination, the defendant testified that he could not recall when the victim took his clothes off and that he had no idea why the tray with the marijuana on it was found by detectives neatly put away in a closet.

Finally, Dr. Roy Matthew, an expert in the field of forensic psychiatry, testified on behalf of the defendant. Dr. Matthew stated that

drugs could have had some effect, but did not account for much of what happened. Based on the number of wounds and the defendant's inability to remember many of the details concerning what happened, Dr. Matthew formed the opinion that the defendant experienced a "rage reaction." Dr. Matthew testified that a "rage reaction" is characterized by extreme violence, a loss of control and a failure to realize the amount of force being used.

I.

**[1]** In his first assignment of error, the defendant contends that the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all the evidence. Specifically, the defendant contends that the State did not present sufficient evidence to prove that the defendant (1) acted with malice, premeditation and deliberation; (2) did not kill the victim in self-defense; and (3) did not kill the victim in the heat of passion.

By presenting evidence, the defendant has waived his objection to the trial court's failure to dismiss at the close of the State's evidence. *State v. Mash*, 328 N.C. 61, 66, 399 S.E.2d 307, 311 (1991). Therefore, only defendant's motion to dismiss at the close of all the evidence is before this Court.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). If substantial evidence of each element is presented, the motion for dismissal is properly denied. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

In ruling on the motion to dismiss, the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor. *State v. McCullers*, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995). The trial court need not concern itself with the weight of the evidence. In reviewing the sufficiency of the evidence, the question for the trial court is whether there is "any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "[C]ontradictions or discrepancies in the evidence are for

the jury to resolve and do not warrant dismissal." *Olson*, 330 N.C. at 564, 411 S.E.2d at 595. Moreover, the evidence need not rule out every hypothesis of innocence. *State v. Baker*, 338 N.C. 526, 558, 451 S.E.2d 574, 593 (1994). Once the trial court decides a reasonable inference of defendant's guilt may be drawn from the evidence, "it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Murphy*, 342 N.C. 813, 819, 467 S.E.2d 428, 432 (1996).

Murder in the first degree, the crime of which the defendant was convicted, is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Fisher*, 318 N.C. 512, 517, 350 S.E.2d 334, 337 (1986). Malice may be presumed from the use of a deadly weapon. *State v. Porter*, 326 N.C. 489, 505, 391 S.E.2d 144, 155 (1990). The defendant's use of at least two knives and a pair of scissors to stab the victim satisfies the malice requirement. Contrary to defendant's position, the State does not lose the benefit of this inference merely because the defendant presented exculpatory evidence in an attempt to negate malice. Exculpatory evidence presented by a defendant is not considered by the trial court when ruling on a motion to dismiss. *State v. Lyons*, 340 N.C. 646, 658, 459 S.E.2d 770, 776 (1995). Therefore, the only remaining element necessary for the State to prove is the existence of premeditation and deliberation.

"A killing is 'premeditated' if the defendant contemplated killing for some period of time, however short, before he acted." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *judgment vacated on other grounds*, —— U.S. ——, 128 L. Ed. 2d 42 (1994). A killing is "deliberate" if the defendant formed an intent to kill and carried out that intent in a cool state of blood, "free from any 'violent passion suddenly aroused by some lawful or just cause or legal provocation.' " *Id.* (quoting *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985)). Premeditation and deliberation are mental processes and ordinarily are not susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. *State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). Circumstances from which premeditation and deliberation may be inferred include:

"(1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing,

(3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds."

*State v. Keel*, 337 N.C. 469, 489, 447 S.E.2d 748, 759 (1994) (quoting *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 870, 93 L. Ed. 2d 166 (1986)), *cert. denied*, — U.S. —, 131 L. Ed. 2d 147 (1995).

When viewed in the light most favorable to the State, the evidence shows three of these seven indicators of premeditation and deliberation. The defendant dealt lethal blows to the victim after he had been felled, the killing was done in a brutal manner, and the victim suffered an excessive number of wounds. The evidence tends to show that the victim was brutally stabbed approximately eighteen times and was bludgeoned with a ceramic vase. Even after the victim was severely disabled and had lost consciousness, the defendant continued to inflict additional stab wounds. At one point, a knife blade broke off inside the victim. Instead of being deterred at this point, the defendant made a conscious effort to continue his attack with a pair of scissors. This evidence clearly supports an inference of premeditation and deliberation.

Defendant's actions after the attack are also indicative of premeditation and deliberation. Defendant did not seek help or medical assistance for the victim and did not call the police. Instead, defendant immediately attempted to conceal evidence. *See State v. Weathers*, 339 N.C. 441, 452, 451 S.E.2d 266, 272 (1994) (defendant's efforts to destroy or hide evidence an indication of premeditation and deliberation). After killing the victim, the defendant stole the victim's jewelry and car and exchanged them for cash to buy drugs. This evidence belies any spontaneous action in response to an attempted sexual assault and implies a clear-headed decision to kill for a purpose.

The physical evidence also supports an inference of premeditation and deliberation. According to the defendant's statement, the victim came into the bedroom carrying a tray containing marijuana, rolling paper and a large knife. Defendant claims that this is the knife he originally used to stab the victim. Investigators, however, did not find the tray, marijuana or rolling paper in the bedroom. These items were found neatly put away in a hall closet. The defendant was

STATE v. LAWS

[345 N.C. 585 (1997)]

unable to explain why these items were not found in the bedroom. This evidence, viewed in the light most favorable to the State, tends to indicate that defendant did not find the first knife he used in the bedroom. Instead, this evidence indicates the defendant searched the house, found the knife in the closet and brought the knife back to the bedroom with the intent to stab the victim.

Defendant further testified that after stabbing the victim in the bedroom, he ran to the front door in an effort to escape, but when he got the door open, the victim pushed it closed and prevented his escape. The evidence, however, indicates that the victim was stabbed a minimum of three or four times in the bedroom. The quantity and severity of the wounds make it very unlikely that the victim was able to chase defendant down the hallway to prevent defendant's escape. However, a trail of dripping blood and a trail of bloody handprints were observed in the hallway. Moreover, blood spatter and defendant's palm prints were found on the inside of the front door. Forensic testing showed that the palm prints were made by defendant while forcibly pushing the door closed. From this evidence, it is reasonable to infer that the victim struggled to get to the front door; that the victim, not the defendant, was trying to escape; that the victim was further attacked near the front door; and that the defendant pushed the door closed to prevent the victim's escape.

Finally, defendant testified that he hit the victim with a ceramic vase to ward off the victim. However, Dr. Radisch testified that the victim suffered six blows to the back of the head and that one or two of the blows were severe enough to cause a loss of consciousness. The victim was found face down with ceramic pieces resting on his back. This evidence, when viewed in the light most favorable to the State, indicates that the victim was beaten while face down on the floor and not while coming after the defendant, and tends to portray the defendant as the aggressor.

Although the State's evidence must ultimately be strong enough to prove beyond a reasonable doubt that the defendant did not act in self-defense or as the result of some violent passion brought about by legally sufficient provocation, the State is entitled to have those questions put before a jury if its own evidence supports reasonable inferences of malice, premeditation and deliberation. In this case, it is clear that the evidence did support such inferences and that the trial court correctly sent the case to the jury. Defendant's first assignment of error is overruled.

II.

[2] In his second assignment of error, the defendant contends that the trial court erred by excluding evidence indicating that the victim had a reputation for being a homosexual.

During the defendant's presentation of evidence, defendant attempted to offer the testimony of Linwood Wilson, a private investigator, to show "the general reputation of the victim in terms of his sexual persuasion." The State objected to the testimony, arguing that it was inadmissible under Rule 404(a)(2) of the North Carolina Rules of Evidence unless it went to the victim's reputation for violence. The trial court agreed with the State but allowed the defendant to make an offer of proof. Wilson testified that in the course of his investigation, he, personally, did not form an opinion as to the victim's sexual orientation. Wilson did, however, testify that several of the victim's acquaintances assumed he was a homosexual because "he was not seen with very many females" and "he always seemed to be with males."

Rule 404 of the North Carolina Rules of Evidence prohibits the admission of evidence of a person's character when offered for the purpose of proving conduct in conformity therewith except in certain limited circumstances. N.C.G.S. § 8C-1, Rule 404(a) (Supp. 1996). Rule 404(a)(2) allows admission of evidence of pertinent character traits of a victim. N.C.G.S. § 8C-1, Rule 404(a)(2). "Pertinent" means " 'relevant in the context of the crime charged.' " *State v. Sexton*, 336 N.C. 321, 359, 444 S.E.2d 879, 901 (quoting *State v. Bogle*, 324 N.C. 190, 198, 376 S.E.2d 745, 749 (1989)), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994). " 'In criminal cases, in order to be admissible as a "pertinent" trait of character, the trait must *bear a special relationship to* or *be involved in* the crime charged.' " *Id.* (quoting *Bogle*, 324 N.C. at 201, 376 S.E.2d at 751). When a defendant argues that he acted in self-defense, the victim's character is admissible for two purposes, to show defendant's fear or apprehension was reasonable or to show the victim was the aggressor. *State v. Watson*, 338 N.C. 168, 187, 449 S.E.2d 694, 706 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 569 (1995). Rule 404(a)(2) is restrictively construed. *Sexton*, 336 N.C. at 360, 444 S.E.2d at 901.

Following these principles, it is clear that the evidence offered by the defendant showing that the victim had a reputation for being a homosexual is not a pertinent character trait within the meaning of Rule 404(a)(2). *See State v. Hodgin*, 210 N.C. 371, 376-77, 186 S.E.

495, 488-89 (1936) (no error in trial court's exclusion of testimony regarding victim's reputation of being homosexual where defendant claimed killing in response to victim's sexual advance). A victim's homosexuality has no more tendency to prove that he would be likely to sexually assault a male than would a victim's heterosexuality show that he would be likely to sexually assault a female. *See State v. Lovin*, 339 N.C. 695, 706, 454 S.E.2d 229, 236 (1995) (evidence of victim's homosexuality has little tendency to show that the victim was the aggressor where defendant claimed killing in response to victim's homosexual advance). Because an individual's sexual orientation bears no relationship to the likelihood that one would threaten a sexual assault, it therefore can bear no relationship to defendant's claim that he killed in self-defense in response to a threatened sexual assault. Therefore, we hold that the trial court did not err by excluding evidence of the victim's sexual orientation.

## III.

**[3]** In his third assignment of error, the defendant contends that his right to a fair trial was violated as a result of instances of prosecutorial misconduct throughout the trial. The defendant's complaints fall into two categories: (1) the form of the prosecutor's objections, and (2) the prosecutor's conduct during cross-examination of defense witnesses. Specifically, the defendant argues that the prosecutor's objections included disrespectful remarks which improperly corrected and criticized defense counsel before the jury and that the prosecutor, during his cross-examinations, distorted witnesses' answers and routinely asked sarcastic, insulting and impertinent questions designed to badger and humiliate the witnesses. After a thorough review of the record, we find that the prosecutor's conduct, viewed in the context of his role as a zealous advocate for criminal convictions, fell squarely within the permissible parameters of professionalism. We therefore conclude that defendant received in this respect a fair trial and overrule this assignment of error.

## IV.

**[4]** In his fourth assignment of error, the defendant contends that the trial court erred by excluding certain evidence regarding "rage reaction" killings. Specifically, the defendant argues that the trial court should have allowed his expert witness to testify about a rage reaction experienced by the expert witness in his personal life.

During direct examination of defendant's expert, Dr. Roy Matthew, the witness testified regarding his familiarity with rage

reactions and the characteristics of rage reactions. Dr. Matthew then testified that he had personal knowledge of two rage reactions in his professional life and one rage reaction in his personal life. Dr. Matthew was then asked to describe the rage reaction which he experienced in his personal life. The State objected, and the trial court sustained the objection. After the trial court sustained the State's objection, the defendant made no offer of proof. Defense counsel then questioned Dr. Matthew as follows:

Q. Do you have a medical opinion as to what occurred to Brian on this particular occasion, sir?

A. Yes.

Q. All right. And what is that opinion?

A. I'm basing this on the information I received from Brian and what I heard of his testimony earlier on. It is very possible that he went into a rage reaction.

Dr. Matthew went on to explain all of the facts that led him to believe defendant had experienced a rage reaction.

" 'In order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record.' " *State v. Hill*, 331 N.C. 387, 410, 417 S.E.2d 765, 776 (1992) (quoting *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). Because the defendant failed to make a specific offer of proof and the significance of the excluded evidence is not obvious from the record, this issue has not been properly preserved for appellate review.

Even assuming, *arguendo*, that the defendant's argument is properly before this Court for appellate review, it is clear that the trial court did not err. Defendant was able to fully present his rage reaction defense through the testimony of Dr. Matthew. Dr. Matthew properly gave his expert opinion that a rage reaction could possibly have caused the defendant to kill the victim. Dr. Matthew explained his opinion by relating the general characteristics exhibited by those who experience rage reactions and by enumerating the facts upon which his opinion was based. Defendant argues that Dr. Matthew's personal knowledge of specific instances of a rage reaction should have been admitted as a basis for the witness' expert opinion under

Rule 703 of the North Carolina Rules of Evidence. However, Dr. Matthew specifically testified that the basis for his opinion was his interview with the defendant and the defendant's testimony in court. He never testified that his personal knowledge of other such rage reactions contributed to his opinion. Moreover, the defendant offered the excluded evidence only as an *example* to help the jury's understanding. The trial court was never asked to admit the evidence as a basis for Dr. Matthew's opinion.

The defendant alternatively argues that the evidence should have been admitted because it would have assisted the jury in understanding the concept of rage reaction. However, this evidence is clearly irrelevant, as defendant has not shown how a rage reaction experienced by some individual, other than the defendant, makes it any more or less probable that the defendant experienced a rage reaction. Accordingly, this assignment of error is overruled.

V.

[5] In his fifth assignment of error, the defendant contends that the trial court committed plain error by instructing the jury that defendant's out-of-court pretrial statement to the police could not be considered as substantive evidence. Specifically, defendant argues that the trial court's instruction that "you must not consider such earlier statement as evidence of the truth of what was said at that earlier time" erroneously deprived the defendant of any benefit from the substantive consideration of the exculpatory portions of his statement. Because defendant did not object to this instruction, our review is limited to plain error.

The full instruction of the trial court containing the sentence complained of reads as follows:

Now, when evidence has been received tending to show that at some earlier time a witness made a statement which may be consistent or may conflict with their testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made and that it is consistent or does conflict with the testimony of the witness at this trial, then you may consider this, together with all other facts and circumstances bearing upon the witnesses' truthfulness in deciding whether you will believe their testimony at this trial.

Assuming arguendo that the exculpatory portions of defendant's statement were substantive evidence, the defendant does not show plain error. Defendant's testimony at trial presented directly to the jury the same evidence that defendant contends was exculpatory in his pretrial statement. Further, the jurors were instructed that they could use defendant's pretrial statement to determine whether to believe the defendant's trial testimony. The defendant thus received the benefit of any strength his pretrial statement could give his testimony at trial. This assignment of error is overruled.

## VI.

[6] In his final assignment of error, the defendant contends that the trial court committed plain error by instructing the jury that perfect and imperfect self-defense require the defendant to have a reasonable belief in the need to kill in self-defense. Defendant concedes that this Court has approved instructions identical to those given by the trial court in the present case in *State v. Richardson*, 341 N.C. 585, 461 S.E.2d 724 (1995). We find no compelling reason to reconsider this issue. Accordingly, this assignment of error is overruled.

For the foregoing reasons, we conclude that the defendant received a fair trial, free of prejudicial error.

NO ERROR.