McCULLOUGH, Judge.
 

 Defendant Della Dietriech was tried in the 10 March 2003 Session of Onslow County Criminal Superior Court after being charged with five counts of cruelty to animals. The State's evidence tended to show that defendant lived with her husband, Stephen, her daughter, Stephanie, and Lucille and Marcel Carone at 1925, 1926, and 1927 Pony Farm Road in Onslow County. There were three buildings on the property, but only one was habitable. A large animal veterinarian, Dr. Thomas Wright, testified that every time he visited defendant, all of the residents came out of the same house, and 1926 was the address he had on file.
 

 In August of 2000 and February of 2001, Dr. Wright visited 1926 Pony Farm Road and spoke with defendant about the condition ofher horses. He used the Henneke body scoring scale to describe malnourishment. The Henneke body scoring system is utilized in the veterinary medical community to describe the amount of body fat and flesh on a horse or other livestock. Dr. Wright also explained proper nutrition and how defendant could put weight on the horses. Elizabeth Toth ran an equine boarding and training facility located one and one-half miles from defendant's residence on Pony Farm Road. Toth passed defendant's horses between four and six times a day and became concerned about their condition. At one point, Toth and her husband dropped off 17 bales of hay because they believed that defendant had fallen on hard times. After Toth filed a claim with Animal Control, defendant began to call and leave messages on Toth's business and home answering machines. At trial, Toth identified the seized horses as belonging to defendant. Jason Bethea worked as an Animal Control Officer in Onslow County. In August of 2001, Bethea received a complaint about the horses located at the intersection of Pony Farm Road and Highway 258. When Bethea visited the site, he observed several skinny horses, no water supply to the property, and no evidence of hay or any other feed. Bethea spoke to Stephanie Dietriech, defendant's daughter, and informed her about these problems.
 

 A former epidemiologist for the State of Vermont and current owner of an equestrian facility, Heidi King, drove by the intersection of Pony Farm Road and Highway 258 on a regular basis. She noticed that the number of animals in the fenced pasture was increasing and that their physical condition was declining. At onepoint, King offered to buy the animals because she was so concerned about them. King even sent certified letters to the state veterinarian, the health director in Onslow County, a district court judge, and a local newspaper.
 

 On 25 April 2002, Bethea informed defendant's husband, Stephen Dietriech, that he would be returning to the residence to photograph all the animals, and at the time, defendant's husband said that would be fine. However, when Bethea returned to photograph the horses, the animals were gone.
 

 Bethea came back to defendant's residence on 30 April 2002. He then proceeded to Brians Woods Road in Maple Hill, North Carolina, another location where defendant kept horses. The animals were thin, debilitated, and in bad condition.
 

 On 2 May 2002, Bethea returned with several other members of the Animal Control staff. The officers photographed the animals, catalogued them, and listed them on the search warrant. Then the animals were taken to farms in the community and boarded while this case was pending. Defendant did not testify or offer any evidence on her behalf.
 

 On 11 March 2003, defendant was found guilty of five counts of cruelty to animals. Four counts were consolidated into one judgment, and defendant was sentenced to 45 days in the North Carolina Department of Corrections. This sentence was suspended, and defendant was placed on supervised probation for 36 months on the condition that she pay for the animals' care following their seizure and that she not possess, own, board, adopt, or have in hercustody any animal during the period of probation. For the remaining count, defendant was sentenced to 45 days in the North Carolina Department of Corrections. This sentence was also suspended, and defendant was placed on supervised probation for 36 months.
 

 Defendant appeals. On appeal, defendant argues that the trial court erred by denying her motion to dismiss. We disagree and conclude that defendant received a fair trial free from reversible error.
 

 In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom.
 
 State v. Olson,
 

 330 N.C. 557
 
 , 564,
 
 411 S.E.2d 592
 
 , 595 (1992). The court must find that there is substantial evidence of each element of the crime charged and of defendant's perpetration of such crime.
 

 Id.
 

 "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 To prove the crime of misdemeanor cruelty to animals, the State must present substantial evidence that a defendant did "intentionally overdrive, overload, wound, injure, torment, kill, or deprive of necessary sustenance, or cause or procure to be over driven, overloaded, wounded, injured, tormented, killed, or deprived of necessary sustenance, any animal[.]"
 
 N.C. Gen. Stat. § 14-360
 
 (a) (2003). Under the cruelty to animals statute, "intentionally" refers to an act or omission "committed knowingly and without justifiable excuse[.]"
 
 N.C. Gen. Stat. § 14-360
 
 (c). Therefore, the State must prove that defendant, knowingly and without justifiable excuse, deprived the animals or caused them to be deprived of necessary sustenance.
 

 The State offered substantial evidence which tended to show that defendant deprived the animals of necessary sustenance. Dr. Wright spoke with defendant about the condition of her horses, including the issue of malnourishment. The jury could have concluded that during Dr. Wright's visits in August of 2000 and February of 2001, defendant possessed horses whose nutritional needs were not being met and that defendant continued to own some or all of those horses in May of 2002.
 

 The State also presented ample evidence which showed that defendant acted knowingly and without justifiable excuse. Dr. Wright met with defendant in 2000, explained that the horses were malnourished, and suggested how defendant could improve their condition. Dr. Wright also used the Henneke scale to illustrate the difference between healthy and malnourished horses. From this evidence, the jury could reasonably infer that defendant knew what was necessary to put weight back on her horses, but failed to act. Furthermore, since the horses' condition continued to decline until they were seized in May of 2002, the jury could determine that defendant's failure to provide necessary sustenance was ongoing. Finally, there was adequate evidence which established the identity of the five horses. Elizabeth Toth stated that the horses that were allegedly abused were the same ones that she saw at the intersection of Highway 258 and Pony Farm Road. Standing alone,Toth's precise description of the horses was adequate to send these charges to the jury. However, the jury also heard from several other witnesses who testified that the seized horses were under defendant's dominion and control. Accordingly, defendant's assignment of error is dismissed.
 

 After a careful review of the record, transcript, and arguments presented, we conclude that defendant received a fair trial free from reversible error.
 

 No error.
 

 Judges BRYANT and ELMORE concur.
 

 Report per Rule 30(e).